**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| _____ : | |
| **DARRELL JONES, et al.,** : | |
| **Plaintiffs,** : | |
| **v.** : | **CIVIL NO. 09-03128** |
| : | |
| **WENDELL N. BUTLER, JR., et al.,** : | |
| **Defendants.** : | |
| _____ : | |

**MEMORANDUM AND ORDER**

Rufe, J.                                                                                    **August 11, 2009**

**I.**

           This matter came before the Court on a Complaint for Declaratory Judgment and

Emergency Injunctive Relief, filed July 15, 2009.[1]  Plaintiffs are Darrell Jones, Charles Warren, Gail

McLary, Daniel Vermeychuk, the Residents of the City of Chester Pennsylvania, and the Chester

Landlord Association (collectively, "Plaintiffs").   According to the Complaint, Plaintiffs "are

residents and property owners of the City of Chester, Delaware County, who it is contended . . . are

obligated to pay certain trash taxes and fees to the City of Chester."[2]  Defendants are various elected

and appointed officials of the City of Chester ("City"), as well as the City itself.

           After service was effectuated, the Court held a preliminary conference with counsel

for the parties on July 21, 2009,[3] in which the Court questioned its jurisdiction to hear this action in

---

[1] Complaint for Declaratory Judgment and Emergency Injunctive Relief ("Compl.") [Doc. No. 1].

[2] Compl. ¶ 1.

[3] See Minute Entry for Proceedings Held July 21, 2009 [Doc. No. 8].

light of the dictates of the Tax Injunction Act.[4]  Pursuant to an expedited response deadline imposed

by the Court, Defendants filed a Motion to Dismiss the action on July 24, 2009, asserting therein that

the Tax Injunction Act deprives the Court of jurisdiction to hear this matter, and seeking dismissal

under Federal Rule of Civil Procedure 12(b)(1).[5]  As directed by the Court, Plaintiffs responded with

respect to the jurisdictional question only on July 31, 2009, contesting Defendants' arguments.[6]

Counsel for the parties presented oral argument on the applicability of the Tax Injunction Act to this

matter on August 6, 2009, and the matter is ready for disposition.

## II.

Under Rule 12 of the Federal Rules of Civil Procedure, a court must dismiss an action

which it lacks subject matter jurisdiction to hear.[7]  A motion to dismiss on this ground may be

brought at any time.[8]  When faced with a motion to dismiss under Rule 12(b)(1), it is a plaintiff's

burden to show that a proper jurisdictional basis exists.[9]

As the Third Circuit has instructed, a Rule 12(b)(1) motion may be treated as either

a facial or factual challenge to the court's jurisdiction, depending on the nature of the argument it

presents.[10]  Where the defendant does not dispute the truthfulness of material facts alleged in the

---

[4] 28 U.S.C. § 1341.

[5] Defs.' Mot. Dismiss [Doc. No. 6].  Defendants also raised other grounds for dismissal which are not addressed in this Memorandum.

[6] Pls. Resp. in Opp'n to Defs.' Mot. Dismiss [Doc. No. 8].

[7] Fed. R. Civ. P. 12(h)(3).

[8] Fed. R. Civ. P. 12(b)(1).

[9] See Dev. Fin. Corp. v. Alpha Hous. & Health Care, 54 F.3d 156, 158 (3d Cir. 1995); KMG Props. v. IRS, No. 08-1544, 2009 WL 1885930, at *2 n. 4  (W.D. Pa. June 30, 2009).

[10] Gould Elecs, Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000).

complaint by presenting contrary evidence of its own, the court may evaluate the motion under the now-familiar Rule 12(b)(1) facial attack standard discussed by the Third Circuit in <u>Phillips v. County of Allegheny</u>.[11]  In applying this standard, the court "may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record."[12]  It must accept as true all factual allegations in the complaint, draw all reasonable inferences therefrom and construe them in the light most favorable to the plaintiff.[13]  A court should not grant such a motion if, "under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[14]  Thus, "[t]he standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)."[15]

### III.[16]

This action arises from notices received in May, 2009, by thousands of property owners or renters in the City stating that the recipient was late in paying rubbish collection fees, and owed such fees, as well as delinquency charges and interest ("Notices").  Due to inadequate

---

[11] <u>Id.</u> at 176-77; <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).  In contrast, when reviewing a factual attack, the court may consider evidence outside the pleadings that controverts the truthfulness of the allegations therein.  Here, because it looks only to the Complaint, the documents attached thereto and matters of public record in ruling upon this Motion, the Court treats the Motion as a facial, not a factual, attack.  <u>Cf. Gould</u>, 220 F.3d at 176-77 (court treated motion under Rule 12(b)(1) as a factual attack where it considered not only Complaint and attached documents but also CERCLA Consent Decrees not referenced in or attached to the Complaint when deciding the motion).

[12] <u>Beverly Enterps., Inc. v. Trump</u>, 182 F.3d 183, 190 n. 3 (3d Cir. 1999) (citing <u>Pension Benefit Gaur. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[13] <u>Phillips</u>, 515 F.3d at 233; <u>Rocks v. City of Philadelphia</u>, 868 F.2d 644, 645 (3d Cir. 1989).

[14] <u>Pinker v. Roche Holdings, Ltd.</u>, 292 F.3d 361, 374 n. 7 (3d Cir. 2002).

[15] <u>Petruska v. Gannon Univ.</u>, 462 F.3d 294, 299 n. 1 (3d Cir. 2006).

[16] In accordance with the applicable standard set forth above, the facts in this section are taken as true from the Complaint, exhibits and public record.

computer programs, the City had failed to notify Notice recipients of the delinquent fees since at

least 1995, and some Notices stated that fees were owed from as many as fourteen years ago.

   The sample Notice referenced in and attached to the Complaint states that it is issued

by the Office of the City Treasurer.  It lists the years in which payment was not received, and the

fees, penalties and interest owed by the recipient.  It states that questions may be directed to the City

Treasurer's Office, during certain hours at a listed telephone number.  It does not specify on its face

how the recipient may dispute or appeal the Notice.  But it does reference the City Ordinance under

which it was issued, City Codified Ordinance 925, and in particular, section 925.021.

   Also referenced in and attached to the Complaint is City Ordinance 925, entitled

"Refuse Collection" ("Ordinance"). First, the Court notes that Section 925.02 states that the City

Streets and Public Improvements Department has jurisdiction over municipal refuse collection within

the City.   Next, Section 925.021 of the Ordinance is entitled, "FEES; APPEAL;

DELINQUENCIES."  In relevant part, Section 925.021(a) ("Fees") provides the following:

> The fees for collection and disposal of ashes, garbage, rubbish and refuse
> placed for collection, pursuant to the provisions of this article, shall be as
> follows, beginning January 1, 1995:
> (1) For all single family dwellings, either owner occupied or renter
> occupied, the sum of one hundred twenty dollars ($120.00) per year per
> single-family dwelling.
> (2) For a boarding house and an apartment house or complex being
> collected by the City and not having its own private collection, the sum of
> one hundred twenty dollars ($120.00) per year per single-family living unit.

Section 925.021 subsection (b) is entitled "Appeal".  It states:

> Any person who is aggrieved with any ruling or decision of the Director of
> the Department in any manner may appeal the ruling or decision to Council
> which shall make the final ruling or decision in the matter.  Such appeal must
> be filed with the Director of the Department of Public Affairs, in writing,
> within twenty days from the ruling or decision of the Director of Streets and

Public Improvements.

Lastly, subsection (c) ("Delinquencies") provides that trash collection fees are payable in the same manner and on the same schedule as City real estate taxes.  It states that the City Tax Collector is the official "who bills for the collection of . . . refuse."  And it lists the City's recourse in the event of unpaid fees, including to cease collecting refuse from the property in question, to place a lien, or to pursue an action in assumpsit in state court.

Plaintiffs attached a copy of an article from a local newspaper to their Complaint as well.  The article, from the Philadelphia *Daily News* dated June 4, 2009, describes the public outcry in the City after "thousands" of individuals received Notices.[17]

One additional piece of evidence from the public record has been adduced by the Defendants, and the Court will consider it herein.  It is a Resolution of the Chester City Council from June 10, 2009.[18]  In its opening paragraphs, the Resolution states the reasons for its promulgation.  These include the fact that "the financial circumstances of the City of Chester and the declining tax base continue to place a greater tax burden on the residents in the City," and also the assertion that "the collection of a significant amount of the delinquent rubbish fees within the current fiscal year will substantially aid the City of Chester in meeting its current obligations and obligations anticipated for the 2010 fiscal year."[19]

In the Complaint, Plaintiffs allege that the thousands of Notice recipients have been afforded no avenue by which to appeal or contest the Notices.  They contend that, if allowed to stand,

---

[17] "Past-due trash bills spark Chester protest," Philadelphia *Daily News*, June 4, 2009, by William Bender.

[18] See Defs.' Mot. Dism. Ex. 1 (June 10, 2009 Resolution of Chester City Council ("June 10, 2009 Resolution")).

[19] Id.

the collection of fees, penalties and interest contemplated in the Notices would amount to a deprivation of property without due process in violation of the Fourteenth Amendment to the United States Constitution.

In their Motion, Defendants argue that this Court lacks jurisdiction to hear the matter pursuant to the Tax Injunction Act and the doctrine of federal-state comity.

**IV.**

The Tax Injunction Act ("Act") provides: "The district court shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."[20]  The Act is "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."[21]  The Act applies equally to claims for injunctive or declaratory relief.[22]  The Supreme Court has also noted a powerful federalism concern, that of federal-state comity, which, taken alone, can serve to bar federal district courts from adjudicating actions for relief from state revenue collection practices.[23]  The Third Circuit has found that, taken together, the Act and relevant decisions of the Supreme Court make "clear that a federal court cannot entertain a suit posing either a legal or equitable challenge to state or local taxes . . . if a sufficient remedy is available in state court."[24]

---

[20] 28 U.S.C. § 1341 (1993).

[21] Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 522 (1981).

[22] Behe v. Chester County Bd. of Assessment, 952 F.2d 66, 68 (3d Cir. 1991).

[23] See Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 299-300 (1943); Real Estate Ass'n v. McNary, 454 U.S. 100, 113-14 (1982).

[24] Kerns v. Dukes, 153 F.3d 96, 101 (3d Cir. 1998) (citing McNary, 454 U.S. at 113-14).

The applicable analysis proceeds in two steps.  First, the Court must determine if Plaintiffs are challenging a "tax" within the meaning of the Tax Injunction Act and concomitant comity concerns.  If a "tax" is at issue, the Court must then determine whether sufficient state remedies are available.[25]  Plaintiffs argue that the challenged assessments are regulatory fees for services provided, not taxes.  Defendants take the opposite position.

The Third Circuit has not articulated a test that courts should use to determine whether an assessment is a "tax" for purposes of the Tax Injunction Act.  Courts in this circuit, however, regularly look to certain relevant factors when making such a determination, and the Court will do so here.[26]  One factor is the purpose of the assessment.  If its primary purpose is to raise revenue, it is more likely a "tax," whereas if it is primarily for regulatory purposes, it is more likely a fee.[27]  Another factor is the body imposing the assessment.  If it is a legislative body, it is more likely a "tax;" if it is a regulatory agency, it is more likely a fee.[28]  Another factor is how the assessment is collected.  Where it is "collected annually in a manner similar" to other taxes, it is more likely a "tax."[29]  Yet another factor is for whose benefit the assessment is taken; if it benefits a broad part of the general community, it is more likely a "tax," but if it benefits "a narrow class of persons," it is more likely a fee.[30]  In making the determination whether an assessment is a "tax," one

---

[25] See 28 U.S.C. § 1341.

[26] See e.g., Kreider v. County of Lancaster, No. 99-1896, 1999 WL 1128942, at *2-*4 (E.D. Pa. Dec. 9, 1999).

[27] See Robinson Protective Alarm Co. v. City of Philadelphia, 581 F.2d 371, 374 (3d Cir. 1978).

[28] See Trading Co. of N. Am. v. Bristol Township Auth., 47 F. Supp. 2d 563, 568 (E.D. Pa. 1999).

[29] Robinson, 581 F.2d 376.

[30] Kreider, 1999 WL 1128942, at *3.

7

factor courts do not consider is the assessment's designation under state law, as the applicability of the Tax Injunction Act and attendant comity principles is exclusively a question of federal law.[31] Moreover, the Third Circuit has instructed that the term "tax" should be interpreted broadly in light of the federalism concerns reflected in the Act.[32]

Here, it is beyond dispute that City Ordinance 925 and the Notices pursuant to it were promulgated by the City Council.  Thus, the fees, delinquency charges and interest assessments at issue were imposed by a legislature.  This factor suggests that the assessments are a tax.  It is also clear that the assessments are imposed on a broad swathe of the population of the City.  The Complaint alleges that approximately four thousand Notices were sent regarding the assessment. This already large group reflects only a fraction of the total number of individuals to whom such assessments are charged, as Notices issued only to those property owners or renters who were allegedly delinquent in paying the assessment.  Moreover, Ordinance 925 strongly suggests that rubbish collection by the City, and its attendant assessment, is at the very least the default mode of refuse collection from single family dwellings in the community.  Section 925.021(a)(1), providing fee amounts for single family dwellings, makes no reference to alternative forms of collection, such as private collection, whereas Section 925.021(a)(2), providing fee amounts for apartment and boarding houses, does expressly refer to the possibility of private refuse collection.[33]  Thus, the Court concludes that the assessment at issue is not charged only to a narrow class of persons, but is broadly

---

[31] See Robinson, 581 F.2d at 374-76.

[32] See Behe, 952 F.2d at 68; Trading Co., 47 F. Supp. 2d at 567.

[33] See Section III, above.

charged within the City community.[34]  Consequently, this factor also suggests the assessment is a tax.

Next, because it is plain from Ordinance 925.021(c) that the assessment at issue is collected in the same manner as real estate taxes, according to the same schedule, and by the City Tax Collector, the factor regarding manner of collection suggests that the assessment is a tax.

As to the purpose of the assessment in question, the Complaint is silent.  Counsel for the parties speculated as to this point in oral argument, but have offered little of substance which the Court may consider in the present analysis.  However, one item the Court does have before it is the June 10, 2009 Resolution of the City Council, in which the reasons for the current collection effort undertaken through the Notices are stated.  This Resolution, unquestionably a matter of public record,[35] states that "the collection of a significant amount of the delinquent rubbish fees within the current fiscal year will substantially aid the City of Chester in meeting its current obligations and obligations anticipated for the 2010 fiscal year."[36]  Thus it appears that any assessments collected through the Notices will be "added to the public fisc" as a source of general revenue in 2009 and 2010, and will not be allocated exclusively, or even primarily, to pay for refuse collection.[37]  On such a public record, this factor suggests that the assessments at issue are more likely a tax than a fee.

In sum, the factors reviewed strongly urge the conclusion that the assessment set forth in the Notices is a "tax" for purposes of the Tax Injunction Act.  The Court so concludes.  It therefore

---

[34] See Trading Co., 47 F. Supp. 2d at 568-69 (finding assessment charged to "broad group of individuals rather than on a narrow class [was] more likely to be a tax than a fee").

[35] See Beverly Enterps., 182 F.3d at 190 n. 3 (finding public proceedings before a legislature to be a matter of public record).

[36] June 10, 2009 Resolution.

[37] See Robinson, 581 F.2d at 374-76.

9

must consider whether "a plain, speedy and efficient remedy may be had in the courts of" Pennsylvania.[38]  If not, the Act is no bar to subject matter jurisdiction.

"[A] state remedy will be sufficient if it provides the taxpayer with a full hearing and judicial determination at which [the taxpayer] may raise any and all constitutional objections."[39] Plaintiffs do not argue that they are unable to access the courts of the Commonwealth of Pennsylvania to raise their constitutional claims.  They argue instead that there is no *administrative* appeal mechanism provided in Ordinance 925 through which they can contest the assessments claimed in the Notices.  Administrative and judicial remedies are not interchangeable, and the Court, in the relevant Tax Injunction Act inquiry, must look to judicial not administrative recourse that might be had.  Yet the Court begins by briefly addressing the Plaintiffs' claim regarding the inability to appeal through the Ordinance.

In the first place, this contention is belied by the plain terms of Ordinance 925.021(b), which is entitled "Appeal", and describes the process of appeals from the Ordinance as applied.  The subsection contemplates appeals made first to the Director of the Department of Streets and Public Improvements, and ultimately to City Council. The Court expects that individuals who wish to dispute the City's exercise of power under the Ordinance would seek to appeal through this administrative process insofar as is necessary to preserve their interests; it likewise expects that having provided for appeals in the Ordinance, the City would erect no administrative obstacles to effected citizens seeking information on or exercising such appellate rights.  That said, however, the availability of an ordinance appeal process is somewhat beside the point of the present inquiry,

---

[38] 28 U.S.C. § 1341.

[39] Hardwick v. Cuomo, 891 F.2d 1097, 1105 (3d Cir. 1989).

which concerns available judicial remedy.

In the context of the Tax Injunction Act, the Third Circuit has repeatedly "emphasized that taxpayers may bring suits in Pennsylvania state courts alleging violations of both the Pennsylvania Constitution and the United States Constitution" in the form of assessments.[40] Pennsylvania cases illuminate the point. For example, in the case Ridley Arms, Inc. v. Township of Ridley, an apartment complex owner sued a township in equity, challenging the constitutionality of its solid waste and garbage removal ordinance as applied, and after the case was appealed, the state Supreme Court held for the plaintiff on the constitutional question.[41] Moreover, Pennsylvania statutory law provides citizens an avenue to judicially challenge municipal claims arising out of a "service supplied".[42] Plaintiffs have a sufficient remedy in the courts of Pennsylvania for their claims. It is there they must turn for any equitable relief if the parties prove unable to resolve this matter through constructive communication despite the fact that such a resolution seems eminently appropriate in this dispute between a city and a large number of its citizens.

For the foregoing reasons, the Court concludes that it does not have jurisdiction to adjudicate Plaintiffs' claims pursuant to the Tax Injunction Act. It therefore grants Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). An appropriate Order follows.

---

[40] Trading Co., 47 F. Supp. 2d at 573 (citing Behe, 952 F.2d at 69; Balazik v. County of Dauphin, 44 F.3d 209, 218 (3d Cir. 1995)).

[41] Ridley Arms, Inc. v. Township of Ridley, 531 A.2d 414 (Pa. 1987); see also Lutz v. H.T. Armour, 151 A.2d 108 (Pa. 1959) (Supreme Court of Pennsylvania affirmed injunction of enforcement of township ordinance regulating garbage collection, as applied, as unconstitutional).

[42] 53 Pa. Cons. Stat. Ann. § 7101 et seq. (2004).

11